UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ERIC WADE CLARK,

                        Petitioner,

        -against-

THE STATE OF NEW YORK, *et al.*,

                        Respondents.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

22 Civ. 6635 (KMK) (AEK)

**TO:  THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

Petitioner Eric Wade Clark ("Petitioner"), proceeding *pro se*, commenced this action on August 3, 2022, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554, ECF No. 1, which was amended on January 4, 2023, ECF No. 6 ("Amended Petition").[1] Petitioner, a convicted sex offender, challenges his continued civil management under strict and intensive supervision and treatment ("SIST") under New York State Mental Hygiene Law ("MHL") § 10.11.  Pursuant to a July 26, 2016 decision and order issued by Acting Supreme Court Justice Susan Cacace ("Judge Cacace") in Supreme Court, Westchester County, Petitioner was determined to be a dangerous sex offender suffering from a mental abnormality, and was subjected to civil confinement.  *See* ECF No. 32 ("State Court Record" or "SR") 151-63.  On March 19, 2019, a decision was issued in County Court, Oneida County, ordering that Petitioner be released from civil confinement to SIST.  SR 164-69.  On April 9, 2021, Petitioner filed a

---

[1] The Court's Order to Answer stated that it construed "the original petition (Dkt. No. 1), amended petition (Dkt. No. 6), and supplementary documents (Dkt. Nos. 3-4) together as the operative amended petition."  ECF No. 9.  Accordingly, references herein to the "Petition" refer to Petitioner's habeas claims as set forth in the Amended Petition and amplified by the various filings and documents from Petitioner's state court proceedings included in ECF Nos. 1, 3, and 4.

petition seeking to be discharged from SIST.  SR 172-204.  Judge Cacace issued a decision and

order on June 15, 2021 that did not decide the discharge petition, but instead directed the

Commissioner of the Office of Mental Health, and the Division of Parole, to provide an updated

report regarding Petitioner's behavior while subject to SIST.  SR 222-30.  Following the receipt

of a psychological evaluation of Petitioner, which concluded that Petitioner met the criteria for

mental abnormality as defined in MHL § 10.03(i),[2] Judge Cacace denied Petitioner's petition for

discharge from SIST on October 14, 2021.  SR 254-56.  Respondents represented in their

September 5, 2023 filing that "Petitioner's appeal of the October 14, 2021 order is pending in the

Appellate Division, Second Department."  ECF No. 33-1 ("Resp. Mem.") at 8; *see id.* at 14 n.5

("On August 16, 2023, respondents' counsel confirmed the status of petitioner's pending appeal

with the Second Department's clerk by telephone").  There have been no further filings on the

docket to suggest that the Appellate Division, Second Department has adjudicated Petitioner's

appeal.

The Petition expressly challenges the June 15, 2021 decision and order and the denial of a

previous federal habeas corpus petition that Petitioner filed in 2010, which challenged the

revocation of his parole in 2007.  *See* Amended Petition at 4-6.[3]  In addition, read broadly, the

Petition also implicitly challenges the October 14, 2021 decision and order to keep Petitioner in

---

[2] Section 10.03(i) defines "mental abnormality" as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct."  MHL § 10.03(i).

[3] Citations to the Amended Petition in this Report and Recommendation are to the page numbers assigned by the Electronic Case Filing system.

SIST, as well as Petitioner's subjection to MHL Article 10[4] proceedings at all from the time those proceedings were initiated in August 2012. *See generally* Petition. For the reasons that follow, I respectfully recommend that the Petition be DENIED.

## BACKGROUND

### I.      Factual Background

On or about January 5, 1983, Petitioner kidnapped a 12-year-old girl and repeatedly raped and sexually abused her until she was able to escape. Resp. Mem. at 2; *see* SR 092. Petitioner pled guilty in Supreme Court, Westchester County, on April 22, 1985 to rape in the first degree and kidnapping in the second degree. Resp. Mem. at 2. On May 17, 1985, Petitioner was sentenced to concurrent indeterminate terms of eight and one-third to 25 years in prison on the rape and kidnapping charges, as well as to a consecutive term of two to six years in prison on an unrelated charge of criminal possession of marijuana in the first degree. SR 001, 102, 209; *see People v. Clark*, 126 A.D.2d 659 (N.Y. App. Div. 1987) (decision affirming judgments of conviction "both rendered May 17, 1985" for rape, kidnapping, and marijuana possession).

In 2003, Petitioner was released to parole supervision, subject to conditions. SR 223 (indicating that Petitioner was released to parole supervision on February 11, 2003); *but see* SR 007, 088 (indicating that Petitioner was released to parole supervision on June 3, 2003). On September 11, 2007, Petitioner agreed to abide by a condition of parole which prohibited the possession of "any items that could be considered as children's paraphernalia," including "children's toys, books, or items that may be considered of interest to children." Resp. Mem. at 3; *see* SR 006, 022-024, 070, 081, 091. Parole officers visited Petitioner's residence on

---

[4] As described in greater detail in footnote 6, *infra*, MHL Article 10 sets forth the procedures for determining whether a sex offender qualifies for civil management.

September 20, 2007 and saw a small pink hat with a ribbon and cartoon characters, which they subsequently confirmed was a child's hat. *See, e.g.*, SR 014-020, 026-027, 034, 039-044. On September 21, 2007, Petitioner was arrested for violating the condition of his parole that barred him from possessing children's paraphernalia. SR 069. Following a hearing held on December 5, 2007, an administrative law judge ("ALJ") found that Petitioner had violated the conditions of his parole; the ALJ recommended revocation of Petitioner's parole and that the Parole Board "impose a hold to [Petitioner's] maximum expiration date." SR 086-092.[5] That decision was adopted by the Commissioner of the Division of Parole. Resp. Mem. at 3; *see* SR 102 ("The Board of Parole affirmed the decision and recommendation of the ALJ."). Petitioner filed a state habeas corpus petition challenging the parole revocation, which was denied, *see* Resp. Mem. at 4; SR 116-18; after appealing the denial of his state habeas corpus petition up through the New York Court of Appeals, *see People ex rel. Clark v. Walsh*, 73 A.D.3d 1409 (N.Y. App. Div. 2010), *appeal dismissed,* 15 N.Y.3d 840 (2010), Petitioner then filed a federal habeas corpus petition on December 8, 2010, *see Clark v. Walsh*, No. 11-cv-44 (S.D.N.Y.) (KMK) ("*Clark I*").

Meanwhile, on or about August 28, 2012, while Petitioner remained incarcerated pursuant to his convictions, the New York State Attorney General's Office filed a petition pursuant to MHL § 10.06(a) (the "Article 10 Petition") in Supreme Court, Wyoming County,

---

[5] According to the New York State Department of Corrections and Community Supervision ("DOCCS") inmate lookup database, the maximum expiration date of Petitioner's sentence was May 30, 2013. *See Incarcerated Lookup*, Department of Corrections and Community Supervision, https://nysdoccslookup.doccs.ny.gov/ [https://perma.cc/FGP9-A8GQ] (last visited Aug. 5, 2024); *see also* SR 107 (Petitioner's state habeas corpus petition, challenging the parole revocation decision, noted that his maximum expiration date was May 30, 2013).

4

seeking a determination that Petitioner was a detained sex offender requiring civil management.[6]

Resp. Mem. at 5; *see* SR 223.  On December 10, 2012, Judge Cacace in Supreme Court,

Westchester County conducted a hearing and found that there was probable cause to believe that

Petitioner was a sex offender requiring civil management.  SR 223.  Both Petitioner's 2010

federal habeas corpus petition and the Article 10 Petition were still pending on May 30, 2013,

when Petitioner's 1985 sentence expired.  Resp. Mem. at 5.  Petitioner voluntarily consented to

remain in prison in light of the pending Article 10 proceedings.  *See Clark I*, ECF No. 30-1

(Consent to Remain the Custody of the Department of Correctional Services Pursuant to

10.06(k)(i) of the Mental Hygiene Law).

On March 31, 2015, Your Honor dismissed the 2010 federal habeas corpus petition as

moot since Petitioner was no longer "in custody" pursuant to either his criminal conviction or

---

[6] MHL Article 10 establishes the procedures for determining whether a sex offender qualifies for civil management.  When a detained sex offender is nearing an anticipated release from confinement, an agency with jurisdiction gives notice to the Attorney General and the Commissioner of Mental Health.  MHL § 10.05(b).  The individual may then be referred to a case review team at the Office of Mental Health for evaluation.  *Id.* § 10.05(d).  The case review team reviews the individual's records, and may arrange a psychiatric examination of the individual, in order to determine whether he or she is a sex offender requiring civil management. *Id.* § 10.05(e).  If the case review team finds that an individual is a sex offender requiring civil management, then the matter is referred to the Attorney General's Office, and the Attorney General may, if deemed necessary, file a civil management petition in the Supreme Court or County Court where the individual is located.  *Id.* §§ 10.05(g), 10.06(a).  If, after conducting a hearing, the court determines that there is probable cause to believe that the individual is a sex offender requiring civil management, the court must then conduct a jury trial to determine whether the individual is a detained sex offender who suffers from a mental abnormality.  *Id.* §§ 10.06(g), 10.06(k), 10.07(a).

parole revocation.  *Clark v. Walsh,* No. 11-cv-44 (KMK), 2015 WL 1501457 (S.D.N.Y. Mar. 31, 2015)[7]; *see* SR 140-50.

A trial was conducted in the Article 10 proceeding on September 12, 2014, and the jury determined that Petitioner was a detained sex offender suffering from a mental abnormality. Resp. Mem. at 5; *see* SR 210, 223.  After a post-dispositional hearing held on July 7, 8, and 11, 2016, on July 26, 2016, Judge Cacace issued a decision and order finding that Petitioner had a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control his behavior, that confinement in a secure treatment facility was required.  SR 151-63; *see* MHL § 10.07(f).[8]

In 2017, after being provided with the annual notice of his right to petition for discharge from his civil commitment in accordance with MHL § 10.09, Petitioner indicated that he did not waive his right to petition for discharge.  The matter was assigned to Acting County Court Judge

---

[7] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases, *infra*, that are unpublished or only available by electronic database shall be simultaneously delivered to *pro se* Petitioner along with this Report and Recommendation.

[8] Section 10.07(f) provides, in relevant part, that

> If the jury . . . determines that the respondent is a detained sex offender who suffers from a mental abnormality, then the court shall consider whether the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision . . . .  If the court finds by clear and convincing evidence that the respondent has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the respondent is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility, then the court shall find the respondent to be a dangerous sex offender requiring confinement.

MHL § 10.07(f).

Daniel R. King in County Court, Oneida County to determine whether Petitioner remained a dangerous sex offender requiring continued civil confinement.  SR 164-69; *see generally* MHL § 10.09 (setting forth the procedures for annual examinations and petitions for discharge).  An evidentiary hearing was conducted on August 14, 2018, at which the parties offered the testimony and reports of psychologists with competing diagnoses based on their evaluations of Petitioner, and on March 19, 2019, Judge King issued a decision in which he concluded that Petitioner continued to suffer from a mental abnormality, but that he was not a dangerous sex offender requiring confinement within the meaning of MHL § 10.03(e).[9]  *See* SR 164-69. Accordingly, Petitioner was released from the secure treatment facility where he had been housed and was placed on a regimen of SIST pursuant to MHL § 10.03(r).[10]  Resp. Mem. at 6.[11]

---

[9] Section 10.03(e) defines a "dangerous sex offender requiring confinement" as "a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility."  MHL § 10.03(e).

[10] Section 10.03(r) defines a "sex offender requiring strict and intensive supervision" as "a detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement."  MHL § 10.03(r).

[11] Although Judge Cacace's June 15, 2021 decision and order refers to a May 21, 2019 decision and order issued by Judge King in Oneida County, *see* SR 226, the only decision and order in the State Court Record that was issued by Judge King is dated March 19, 2019.  SR 169. The March 19, 2019 decision and order directs that on May 21, 2019, a review would take place of the SIST investigation with respect to Petitioner's potential release to SIST "and if acceptable, the SIST allocution and order for release to SIST." *Id.*  There is nothing else in the State Court Record regarding the proceedings in Oneida County.  A two-page document included in one of Petitioner's summary judgment filings, entitled "Condition(s) of Strict and Intensive Supervision and Treatment (SIST Only)," notes that SIST was ordered on May 21, 2019.  *See* ECF No. 40 at 11.

On April 9, 2021, Petitioner, proceeding *pro se*, filed a petition in Supreme Court, Westchester County, seeking discharge from SIST pursuant to MHL § 10.11(f).[12]  Petitioner claimed that: (1) the Article 10 Petition filed in 2012 was invalid because he had already completed his sentences for rape and kidnapping and therefore was not a "detained sex offender" when the petition was filed; (2) there was no evidence that he had a mental abnormality continuing to the present day; (3) he was denied the right to present evidence of a polygraph examination at the 2007 parole revocation hearing; and (4) Your Honor erred in denying his previous federal habeas corpus petition as moot.  SR 172-97.  Petitioner also filed a motion requesting that he be allowed to present polygraph evidence in connection with his petition for discharge from SIST.  SR 198-99.

On June 15, 2021, Judge Cacace issued a decision and order regarding the petition.  SR 222-30.  Judge Cacace rejected Petitioner's contention that the Article 10 Petition was jurisdictionally improper, finding that he was a detained sex offender when it was filed on August 28, 2012.  SR 228-29.  She additionally found that while Petitioner could not seek to be relieved of his obligation to comply with the terms and conditions of his SIST regimen based on a challenge to the Article 10 Petition, he could seek modification or termination of SIST and its conditions under MHL § 10.11(f). SR 229.  Construing the April 9, 2021 petition as one seeking termination of SIST under MHL § 10.11(f), Judge Cacace directed the Commissioner of the Office of Mental Health, and the Division of Parole, to provide "an updated report concerning the petitioner's conduct while subject to his current SIST regimen," and stated that upon receipt of such a report, she would "consider and determine whether a sufficient basis exists to further

---

[12] Section 10.11(f) provides that a "person subject to a regimen of [SIST] pursuant to this article may petition every two years for modification or termination, commencing no sooner than two years after the regimen of [SIST] commenced . . . ."  MHL § 10.11(f).

direct that a hearing upon the instant petition be conducted in the manner provided by MHL § 10.11(h).[13]" *Id.* With respect to Petitioner's motion to have the court consider polygraph evidence, Judge Cacace denied the order to the extent that Petitioner sought to use the polygraph evidence to retroactively challenge the 2007 parole revocation, and otherwise found that the motion was premature to the extent that Petitioner would want to use the polygraph evidence in connection with any prospective hearing on his petition to terminate SIST. SR 229-30. In conclusion, Judge Cacace ordered Petitioner to "continue the regime of SIST under the existing terms and conditions thereof without modification, pending the Court's determination of the instant petition for relief." SR 230.

Petitioner, proceeding *pro se*, appealed Judge Cacace's June 15, 2021 decision and order, but the Appellate Division, Second Department dismissed the appeal on September 17, 2021, finding that the decision and order was not appealable as of right and leave to appeal had not been granted. *See* SR 261.[14] After reviewing the written report of an expert psychologist provided by the Attorney General's Office, which concluded that Petitioner met the criteria for mental abnormality as defined in MHL § 10.03(i),[15] and without receiving any offsetting evidence from Petitioner, Judge Cacace issued an order on October 14, 2021, finding that

---

[13] Section 10.11(h) provides, among other things, that "[u]pon receipt of a petition for termination pursuant to this section, the court may hold a hearing on such petition." MHL § 10.11(h).

[14] On December 13, 2021, the Appellate Division, Second Department denied Petitioner's motion to reinstate the appeal. *See* ECF No. 3 at 3.

[15] Section 10.03(i) defines a "mental abnormality" as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct." MHL § 10.03(i).

Petitioner was still a sex offender requiring civil management, and ordered that he remain on SIST. SR 254-56.[16] Respondents represented in their September 5, 2023 filing that "Petitioner's appeal of the October 14, 2021 order is pending in the Appellate Division, Second Department." Resp. Mem. at 8; *see id.* at 14 n.5. There have been no further filings on the docket to suggest that the Appellate Division, Second Department has adjudicated Petitioner's appeal.

## II.    Procedural History

Petitioner filed his original petition in this case on August 3, 2022, and an amended petition on January 4, 2023. Both before and after Respondents filed their response to the Petition (which is comprised of ECF Nos. 1, 3, 4, 6, *see* footnote 1, *supra*), Petitioner submitted numerous filings, including several motions for summary judgment. *See* ECF Nos. 40, 43, 46. All of the various filings reiterate Petitioner's claims and contentions asserted in this habeas proceeding—many of the filings are duplicative of one another, and they challenge all of the decisions that have been issued since Petitioner's parole revocation in 2007. This Report and Recommendation concerning Petitioner's claims for habeas corpus relief herein is intended to, and does, address all of Petitioner's claims, whether included in the Petition itself or in any of the other numerous, and voluminous, documents filed by Petitioner on this docket.

## DISCUSSION

## I.    Standard of Review

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas

---

[16] Judge Cacace noted that pursuant to MHL § 10.11(f), Petitioner could petition Supreme Court, Westchester County every two years for modification or termination of his regimen of SIST, "with that two-year period commencing no sooner than two years after the date of this Order[.]" SR 255.

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Before a federal district court may review the merits of a state criminal judgment in a

habeas corpus action, the court must first determine whether the petitioner has complied with the

procedural requirements set forth in 28 U.S.C §§ 2244 and 2254.  If a petitioner has met these

threshold requirements, a federal district court may hear "an application for a writ of habeas

corpus in behalf of a person in custody pursuant to the judgment of a State court" only if the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  The court must then determine the appropriate standard of review

applicable to the petitioner's claims in accordance with 28 U.S.C § 2254(d).

Generally, a state prisoner has one year from the date his or her conviction becomes final

to file a habeas corpus petition in federal court.  28 U.S.C § 2244(d)(1).  This limitations period

ordinarily begins to run on "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Under AEDPA, all state court remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); *see
also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).  "This requires that the prisoner

'fairly present' his [or her] constitutional claim to the state courts, which he [or she]

accomplishes by presenting the essential factual and legal premises of his [or her] federal

constitutional claim to the highest state court capable of reviewing it."  *Jackson*, 763 F.3d at 133

(quotation marks omitted).  In the interests of comity and expeditious federal review, "[s]tates

should have the first opportunity to address and correct alleged violations of [a] state prisoner's

11

federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While

> it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is well-established in [the

> Second Circuit] that the objectively unreasonable standard of § 2254(d)(1)
> means that petitioner must identify some increment of incorrectness
> beyond error in order to obtain habeas relief.

*Id.* at 68-69 (cleaned up).

Under the second prong of Section 2254(d), the factual findings of state courts are presumed to be correct. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Submissions by *pro se* [petitioners] are to be examined with special solicitude, interpreted to raise the strongest arguments that they suggest, and held to less stringent standards than formal pleadings drafted by lawyers." *Gaines v. McIntosh*, No. 21-cv-6619 (JPC) (SDA), 2022 WL 3109042, at *4 (S.D.N.Y. Mar. 23, 2022) (cleaned up), *adopted by* 2022 WL 3100667 (S.D.N.Y. Aug. 4, 2022).

## II.     Petitioner's Habeas Corpus Claims

Through this habeas corpus proceeding, Petitioner seeks to challenge virtually every state and federal court determination that has been made beginning with the revocation of his parole in 2007 and continuing through the denial of his petition seeking termination of his SIST regimen on October 14, 2021. Petitioner's claims are essentially those set forth in the four "causes" listed in the Amended Petition, and generally echo those set forth in his petition for SIST termination. "Cause One" purports to challenge Judge Cacace's finding in her June 15, 2021 decision and order that the Article 10 Petition was not jurisdictionally improper because Petitioner was a detained sex offender at the time the Article 10 Petition was filed. Amended Petition at 4-5. Petitioner attempts to use this decision as a basis to seek habeas relief and compensation "for all liberty deprivation from the unlawful proceeding by the State of New York by Article 10," from the commencement of the Article 10 proceedings in 2012 through the denial of his motion for

13

SIST termination in October 2021.  *Id.* at 5.  "Cause 2" appears to challenge the Article 10 proceedings overall, from August 2012 through the October 14, 2021 decision and order determining that Petitioner should remain under SIST, because polygraph evidence purportedly establishes that Petitioner should never have been either confined in a secure treatment facility or subject to SIST.  *See id.*  "Cause 3" challenges Your Honor's decision dismissing as moot Petitioner's prior federal habeas corpus petition, which challenged his 2007 parole revocation. *Id.*  Petitioner's contention seems to be that his claims were not moot because he has suffered collateral consequences as a result of the parole revocation.  *Id.*  "Cause 4" attempts to assert a due process violation, seemingly based on the denial of Petitioner's ability to use polygraph evidence to challenge every decision from the 2007 parole revocation through the denial of termination of SIST.  *Id.* at 6.  It also includes unspecified allegations of defamation, seemingly based on either the expert medical opinions credited by the state courts in concluding that Petitioner was a sex offender who should be subject to civil confinement and then SIST, or the opinions of the state courts themselves that he was a sex offender who should be subject to civil confinement and then SIST, which Petitioner appears to believe were based solely on the conduct that led to the revocation of his parole, *i.e.*, his possession of a pink child's hat.  *Id.*

As explained below, Petitioner's claims are either time-barred or unexhausted and without merit.  Accordingly, I respectfully recommend that the Petition be denied in its entirety.

### A.    Availability of Habeas Corpus Relief

AEDPA governs habeas corpus petitions brought by state prisoners to challenge the execution of their sentences, including the revocation of parole.  *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003).

AEDPA also governs habeas corpus petitions that challenge a petitioner's civil confinement under MHL Article 10.  *See Brown v. New York*, No. 18-cv-0491, 2018 WL 10879393, at *3 (S.D.N.Y. Feb. 6, 2018) (explaining that a petitioner may challenge a state court order of civil commitment in a habeas corpus action).  Neither party addresses the precise question of whether a federal habeas corpus petition may be brought to challenge state court determinations that a convicted sex offender should be, or should remain, subject to SIST, *i.e.*, whether a person under a SIST regimen is "in custody pursuant to the judgment of a State court" as required for habeas relief under 28 U.S.C. § 2254(a).  Analogous case law and the text of the MHL itself support the conclusion that being subject to SIST is tantamount to being "in custody" for habeas purposes.

"[T]he Supreme Court has affirmed 'that, besides physical imprisonment, there are other restraints on a [person's] liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.'" *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).  Courts of Appeals "have recognized that a variety of nonconfinement restraints on liberty satisfy the custodial requirement," such as post-release supervision, 500 hours of community service, banishment from tribal land, a mandatory 14-hour alcohol rehabilitation program, an unexpired suspended sentence, and probation.  *Id.* at 216 (collecting cases).  "Those cases where courts have declined to find the petitioners sufficiently 'in custody' have typically involved the imposition of fines or civil disabilities, such as suspension of licenses."  *Id.* (collecting cases regarding restitution, monetary fines, suspension of a driver's license, and suspension of professional licenses).  The question of whether the "in custody" requirement is satisfied "requires a court to judge the severity of an actual or potential restraint

15

on liberty." *Id.* (quotation marks omitted). "[C]ourts have considered even restraints on liberty that might appear short in duration or less burdensome than probation or supervised release severe enough because they required petitioners to appear in certain places at certain times, . . . or exposed them to future adverse consequences on discretion of the supervising court." *Id.* (collecting cases).

The SIST regimen set forth in MHL § 10.11 appears to impose restraints on liberty sufficient to satisfy the "in custody" requirement. For example, Section 10.11(a) provides that SIST supervision requirements "may include but need not be limited to, electronic monitoring or global positioning satellite tracking for an appropriate period of time, polygraph monitoring, specification of residence or type or residence, prohibition of contact with identified past or potential victims, [and] strict and intensive supervision by a parole officer . . . . In addition, . . . the commissioner shall recommend a specific course of treatment." MHL § 10.11(a)(1). Section 10.11(b) further provides that "[p]ersons ordered into a regimen of [SIST] pursuant to this article shall be subject to a minimum of six face-to-face supervision contacts and six collateral contacts per month." MHL § 10.11(b)(1). Section 10.11(c) makes clear that "[a]n order for a regimen of [SIST] places the person *in the custody and control* of the department of corrections and community supervision. A person ordered to undergo a regimen of [SIST] pursuant to this article is subject to lawful conditions set by the court and the department of corrections and community supervision." MHL § 10.11(c) (emphasis added). Moreover, Section 10.11(d) states that "[a] person's regimen of [SIST] may be revoked if such a person violates a condition of strict and intensive supervision," and further provides that if a parole officer "has reasonable cause to believe that the person has violated a condition of the regimen of [SIST] or, if there is an oral or written evaluation or report by a treating professional indicating that the person may be a

16

dangerous sex offender requiring confinement, a parole officer . . . may take the person into custody and transport the person for lodging in a secure treatment facility or a local correctional facility for an evaluation by a psychiatric examiner . . . ." MHL § 10.11(d)(1).

Included in one of Petitioner's filings is a two-page document, signed by Petitioner on October 24, 2023, setting forth certain SIST conditions; this document reflects the restraints on Petitioner's liberty imposed by his SIST regimen. *See* ECF No. 40 at 11-12. As part of his SIST program, Petitioner agreed that he would, among other things, keep an intake appointment scheduled for October 30, 2023 "for any treatment assessment and/or intake required by my SIST Multiple Service Outpatient Treatment Plan"; "participate and fully cooperate with any recommended mental health evaluations" and "fully comply with the mental health providers[']" recommendations; and "submit to any medical/psychiatric treatment directed by [the] Court or [his] Parole Officer and comply with and remain under any care and treatment so specified." *Id.* Thus, Petitioner was required to appear at a certain place at a certain time to submit to mental health assessment as well as any mental health evaluations and/or treatment recommended. To the extent that this document reflects the types of restraints imposed on Petitioner as part of his SIST regimen, the Court concludes that such restraints satisfy AEDPA's "in custody" requirement, and that Petitioner's challenge to the denial of his petition for discharge from SIST is therefore a proper subject for federal habeas corpus relief.

B.    **Timeliness of Petitioner's Claims**

AEDPA imposes a one-year limitation period for the filing of a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). This limitation period begins to run from the latest of four possible dates: (1) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which a

government-created impediment to filing a habeas corpus petition is removed; (3) the date on which the constitutional right asserted is initially recognized by the Supreme Court, if the right has been made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(A)-(D).  In this case, the applicable date from which to measure the one-year limitation period for the filing of a federal habeas corpus petition is the date on which Petitioner's state court conviction became final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Where, as here, a petition includes more than one claim, the AEDPA statute of limitations is applied on a claim-by-claim basis.  *See Clemente v. Lee*, 72 F.4th 466, 468-69 (2d Cir. 2023).

### 1.      Claims Related to the 2007 Parole Revocation

To the extent that Petitioner challenges the constitutionality of his 2007 parole revocation in any way—which he does in "Cause 3" and appears to do in part in "Cause 4"—or attempts to raise claims based on the alleged invalidity of his parole revocation, *see, e.g.*, Amended Petition at 36, such claims are time barred.

On December 5, 2007, an ALJ recommended that Petitioner's parole be revoked, SR 086-092, and the Commissioner of the Division of Parole adopted the ALJ's recommendation.  Resp. Mem. at 3; *see* SR 102.  Petitioner thereafter filed a state habeas corpus petition, which was denied in Supreme Court, Sullivan County on September 4, 2009.  SR 116-18.  That denial was affirmed by the Appellate Division, Third Department on May 27, 2010.  SR 119-24; *see People ex rel. Clark v. Walsh*, 73 A.D.3d 1409 (N.Y. App. Div. 2010).  Petitioner's appeal of the

18

Appellate Division decision was dismissed by the New York Court of Appeals on September 21, 2010.  SR 132-33; *see People ex rel. Clark v. Walsh*, 15 N.Y.3d 840 (2010).  Because Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court seeking review of the New York state court decisions, the parole revocation decision became final on December 20, 2010, 90 days after the New York Court of Appeals dismissed Petitioner's appeal.  *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003).  Accordingly, Petitioner had until December 20, 2011 to file any habeas corpus claims related to the 2007 parole revocation decision.  And Petitioner did, in fact, pursue federal habeas corpus claims in connection with that decision, by timely filing his earlier federal habeas corpus petition in December 2010.  *See Clark I*, ECF No. 1.  The original federal habeas corpus petition was the opportunity for Petitioner to challenge the 2007 parole revocation decision.  Any such claims raised in this habeas corpus proceeding are therefore untimely by more than a decade.

In "rare and exceptional circumstance[s]" the Court can equitably toll the AEDPA limitation period, allowing a petition filed outside of the one-year limitation period to be considered timely.  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (cleaned up).  To be eligible for equitable tolling, a petitioner must show that (1) extraordinary circumstances prevented him or her from filing the petition on time, and (2) the petitioner acted with reasonable diligence throughout the period he or she seeks to toll.  *Id.*; *see Holland v. Florida*, 560 U.S. 631, 649 (2010).  Petitioner makes no argument that any circumstances prevented him from filing any claims related to the 2007 parole revocation in a timely fashion, nor does he argue that he acted with reasonable diligence to assert any such claims throughout the ensuing years.  Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations with respect to any

19

additional claims related to the 2007 parole revocation that he might wish to assert in this habeas corpus proceeding.

The Supreme Court also has held that a claim of actual innocence may provide an "equitable exception" to the AEDPA limitation period. *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392-93 (2013). This exception creates a "gateway" to habeas corpus review despite expiration of the statute of limitations, and requires a petitioner to make the same showing of actual innocence necessary to overcome a procedural bar to habeas corpus review that was articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), and *House v. Bell*, 547 U.S. 518 (2006). *See McQuiggin*, 569 U.S. at 386. Thus, "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To be "credible," an actual innocence claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup,* 513 U.S. at 324 and citing *House,* 547 U.S. at 537). For such a claim to be "compelling," "the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him [or her] guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

Petitioner does not claim that he is actually innocent of the crimes for which he was convicted and sentenced. Insofar as the Petition could be liberally construed as asserting a claim of actual innocence with respect to the parole violation based on the polygraph evidence, Petitioner already challenged the parole revocation based on the ALJ's failure to consider that evidence in his previously filed federal habeas corpus petition. *See Clark,* 2015 WL 1501457 at *2 (Petitioner claimed that his parole revocation was unconstitutionally obtained because, *inter*

20

*alia*, the ALJ "erred in not admitting Clark's polygraph examination evidence") (brackets omitted).  The Court cannot glean any other possible basis for a claim of actual innocence.  Furthermore, as explained below, any failure of the state courts to consider polygraph evidence is not a proper ground for habeas relief.  Accordingly, the equitable exception of actual innocence does not apply here.

To the extent Petitioner's claims regarding the 2007 parole revocation can be interpreted as a motion for relief from the judgment in *Clark I*, those claims are also untimely.  In an order issued on March 31, 2015, Your Honor dismissed Petitioner's claims regarding the 2007 parole revocation as moot.  *See Clark*, 2015 WL 1501457, at *3-6.  Petitioner did not appeal the judgment of dismissal of his prior habeas corpus petition.  Moreover, the time for Petitioner to seek reconsideration of the dismissal of his prior petition pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure has long since expired.  *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . .")[17]; *see also, e.g., Stuyvesant v. Conway*, No. 03-cv-3856 (JLR), 2023 WL

---

[17] Rule 60(b) allows a party to seek relief from a final judgment for

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . ., misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged . . .; or

(6) any other reason that justifies relief.

21

348469, at *2 (S.D.N.Y. Jan. 20, 2023) (15 years is not a "reasonable time" for filing Rule 60(b) motion) (citing cases where delays of three and a half years and four years before bringing Rule 60(b) motions were considered unreasonable); *Griffin v. Kirkpatrick*, No. 08-cv-886 (LIV) (MJR), 2022 WL 2758003, at *3 (W.D.N.Y. Mar. 25, 2022) (10 years from the date judgment was entered was not a "reasonable amount of time for petitioner to have waited before filing" a Rule 60(b)(6) motion) (citing cases), *adopted by* 2022 WL 2207178 (W.D.N.Y. June 21, 2022).

For all of these reasons, Petitioner's claims regarding the 2007 parole revocation decision are time barred, and cannot be considered again as part of this habeas corpus proceeding.

### 2.    Claims Related to the Article 10 Proceedings Commenced in 2012 and the 2021 Petition to Terminate SIST

"Cause One," "Cause 2," and "Cause 4" of the Amended Petition challenge the denial of Petitioner's petition to terminate SIST, and also arguably the original Article 10 Petition and proceedings.  These claims are not time-barred, but they are unexhausted.

#### i.    The Article 10 Proceedings

On or about August 28, 2012, while Petitioner remained incarcerated pursuant to his convictions, the New York State Attorney General's Office filed the Article 10 Petition in Supreme Court, Wyoming County, seeking a determination that Petitioner was a detained sex

---

Fed. R. Civ. P. 60(b).  Respondents contend that Rule 60(c)(1) sets a one-year time limit for motions alleging mistake, newly discovered evidence, fraud, or misconduct by the opposing party.  *See* Resp. Mem. at 14.  But the Court does not interpret Petitioner's claims as raising any of those arguments.  Rather, the Court more broadly considers Petitioner's motion to be for relief pursuant to Rule 60(b)(6), the catch-all provision of the rule, which requires that such a motion "must be made within a reasonable time."  *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").  As is made manifest by the cases cited, *infra*, however, even under the more lenient standard afforded to Rule 60(b)(6) motions, given that the order adopting the report and recommendation in *Clark I* was issued over 9 years ago, Petitioner has not pursued this relief "within a reasonable time."

offender requiring civil management.  *See* Resp. Mem. at 5; SR 223.  On December 10, 2012, Judge Cacace in Supreme Court, Westchester County conducted a hearing and found that there was probable cause to believe that Petitioner was a sex offender requiring civil management.  SR 223; *see* Background, Section I, *supra*.  After several years, the Article 10 proceedings culminated in a decision and order by Judge Cacace, filed and entered on July 26, 2016 in Supreme Court, Westchester County, finding that Petitioner was suffering from "a mental abnormality involving such a strong pre-disposition to commit sex offenses, and such an inability to control his behavior, that he is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility (MHL § 10.07[f])."  *See* SR 151-63.  Petitioner had 30 days after service of notice of entry of that decision to file an appeal.  *See* MHL § 10.13(b) ("Both the respondent and the attorney general may appeal from any final order entered pursuant to this article.  The provisions of articles fifty-five, fifty-six, and fifty-seven of the civil practice law and rules shall govern appeals taken from orders entered pursuant to this article."); N.Y. C.P.L.R. § 5513(a) ("An appeal as of right must be taken within thirty days after *service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry*, except that when appellant has served a copy of the judgment or order and written notice of its entry, the appeal must be taken within thirty days thereof.") (emphasis added).  There is no proof in the voluminous state court records that have been submitted by both parties in connection with the Petition that either Respondents or Petitioner served the other with notice of entry of the July 26, 2016 decision and order, which is what would have triggered the 30-day period for filing an appeal.  Nor is there any basis for this Court to conclude that any exemption to the notice of entry requirement is applicable in the context of an Article 10 proceeding.  *Cf. Wayne J. v. State*, 55 Misc. 3d 1224(A), 2017 WL 2541916 (N.Y. Sup. Ct. June 12, 2017) (court

23

ordered that decision denying motion for appointment of new counsel, or to proceed *pro se* with MHL Article 10 annual review hearing, was to be filed and served by petitioner's counsel with notice of entry); *State v. Couch*, 54 Misc. 3d 1016 (N.Y. Sup. Ct. 2016) (in decision barring respondent from filing *pro se* motions in his Article 10 proceeding, court noted that "transmittal of copies of this decision and order by the court shall not constitute notice of entry (*see* CPLR 5513)"); *State v. Wilkes*, 23 Misc. 3d 1123(A), 2009 WL 1298608 (N.Y. Sup. Ct. Apr. 29, 2009) (in decision denying respondent's motion to dismiss Article 10 petition, court noted that "mailing of a copy of this Decision and Order by this Court shall not constitute notice of entry"), *appeal dismissed*, 77 A.D.3d 1451 (N.Y. App. Div. 2010).  Accordingly, contrary to Respondents' assertion, the Court cannot conclude that Judge Cacace's decision and order became a final judgment for habeas purposes 30 days later, on August 25, 2016.[18]  *See, e.g., Anthony V.L. v. Bernadette R.*, 178 A.D.3d 479, 479-80 (N.Y. App. Div. 2019) ("As a preliminary matter, petitioner's appeal from the order entered on or about September 11, 2013 is timely, because the record does not show that respondent ever served petitioner with notice of entry of that order, and therefore the time to notice the appeal never began to run."); *Paternosh v. Wood*, 151 A.D.3d 1733, 1734 (N.Y. App. Div. 2017) ("[T]he 30-day period in which to file a notice of appeal is triggered only by service of a copy of the judgment or order, together with 'written notice of its entry,' on the opposing party.  The record here does not contain a notice of entry, and it therefore does not establish that the 30-day period ever began to run.") (citations omitted).  Rather, any claims related to that decision are unexhausted for purposes of habeas corpus review since

---

[18] According to Respondents, after the July 26, 2016 decision "was entered, petitioner had 30 days to appeal.  MHL § 10.13.  He did not do so; therefore, that judgment became final on Thursday, August 25, 2016."  Resp. Mem. at 11.  Notably, Respondents do not mention having served a notice of entry.

24

Petitioner has not pursued any state court appeal of the July 2016 decision and order. These claims are not time barred for habeas corpus purposes, however—because the time to take an appeal from the July 26, 2016 decision and order never began to run, the AEDPA limitation period based on the conclusion of direct review or the expiration of time for seeking such review, *see* 28 U.S.C § 2244(d)(1)(A), also has not concluded.

### ii.      The 2021 Petition to Terminate SIST

On April 9, 2021, Petitioner filed a petition in Supreme Court, Westchester County, seeking discharge from SIST, SR 172-204, and on June 15, 2021, Judge Cacace issued a decision and order regarding the petition. SR 222-30[19]; *see* Background, Section I, *supra*. Judge Cacace rejected Petitioner's contention that the Article 10 Petition was jurisdictionally improper, finding

---

[19] Judge Cacace characterized the petition as follows:

> By notice of petition, the petitioner moves this Court to discharge him from all further proceedings conducted under the authority of Article 10 of the [MHL], or in the alternative, seeks the termination of his present supervision under [SIST], and seeks the admission of polygraph evidence in connection with any future Article 10 proceedings.

SR 222.

that he was a detained sex offender in 2012 when the petition was filed.  SR 228-29.[20]  Judge

Cacace additionally found that while Petitioner could not seek to be relieved of his obligation to

comply with the terms and conditions of his SIST regimen based on a challenge to the Article 10

Petition, he could seek modification or termination of SIST and its conditions under MHL §

10.11(f).  SR 229.  In conclusion, Judge Cacace ordered Petitioner to "continue the regime of

SIST under the existing terms and conditions thereof without modification, pending the Court's

determination of the instant petition for relief."  SR 230.

On October 14, 2021, after reviewing the written report of an expert psychologist

provided by the Attorney General's Office, and in the absence of any countervailing evidence

from Petitioner, Judge Cacace found that Petitioner was still a sex offender requiring civil

management and ordered that he remain on SIST.  SR 254-56.  According to Respondents, as of

the filing of their response to the Petition on September 5, 2023, Petitioner's appeal of the

---

[20] Judge Cacace explained her reasoning as follows:

> Although the petitioner may not now be heard to challenge the
> respondents' previous filing of a sex offender civil management petition
> against him pursuant to MHL § 10.06(a) nearly 10 years ago, the
> petitioner's argument lacks merit due to the Court's determination that the
> respondents had timely filed their sex offender civil management petition
> pursuant to MHL § 10.06(a) against the petitioner in the Supreme Court,
> Wyoming County, on August 28, 2012, which the record reveals to have
> been prior to the petitioner's release from imprisonment—under DOCCS'
> custody—for the service of his imposed sentence of incarceration based
> upon his conviction of qualifying sex offenses defined in MHL § 10.03(g)
> and (p), that made him a detained sex offender at that time.

SR 228-29.

October 14, 2021 order was pending in the Appellate Division, Second Department.[21]  Resp. Mem at 8, 14 n.5.  Therefore, Petitioner's claims related to Judge Cacace's denial of his petition for SIST termination are not time-barred, but they are unexhausted given the pendency of the appeal.

*    *    *    *    *    *

In sum, although technically the Petition is "mixed," with both exhausted and unexhausted claims, the exhausted claims—*i.e.*, those relating to Petitioner's 2007 parole revocation—are time-barred and should be dismissed on that basis.

Any claims remaining in the Petition that are not time-barred are unexhausted, but may nonetheless be denied by the Court on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Williams v. Artus*, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010) ("If the unexhausted claims are 'plainly meritless,' the district court can dismiss these claims on the merits.") (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).  For the reasons detailed below, Petitioner's remaining unexhausted claims—*i.e.*, those related to the 2016 and 2021 decisions—should be denied as "plainly meritless."

**C.      The Merits of Petitioner's Unexhausted Claims**

**1.      Whether Petitioner Was a "Detained Sex Offender"**

"Cause One" of the Amended Petition purports to challenge Judge Cacace's finding in her June 15, 2021 decision and order which rejected Petitioner's argument that the Article 10

---

[21] Respondents have not provided any further update to the Court regarding the pending appeal in the Second Department, and Petitioner also has not filed anything to indicate that there has been any change in the status of his Second Department appeal.  The Court also has not located any decisions on the pending appeal in any electronic database.

Petition was jurisdictionally improper, and explained that Petitioner was, in fact, a detained sex offender in August 2012. Amended Petition at 4-5; *see* SR 228-29.[22] "Cause One" can also be read as a challenge to Judge Cacace's July 26, 2016 decision and order on the ground that it was the culmination of the allegedly jurisdictionally improper Article 10 proceedings. In "Cause One" Petitioner maintains that since he had already served his sentences for rape and kidnapping when the Article 10 Petition was filed in 2012, and was at that time only serving his consecutive sentence for marijuana possession, there was no "qualifying offense" for him to be considered a detained sex offender. Amended Petition at 4-5; *see id.* at 59 ("I was no longer under a sexual sentence after 2008 and legally only in prison for marijuana from June 6, 2008 to the 30 year maximum[,] which certainly means in 2012, I was not subject to Article 10."). Moreover, according to Petitioner, since the finding that he was a detained sex offender allowed for the commencement and prosecution of the Article 10 proceedings, "[h]abeas relief [is] required and compensation for all liberty deprivation from the unlawful proceeding by the State of New York by Article 10 and all proceedings thereof [are] void." *Id.* at 5. Simply put, this claim has no merit.

First, to the extent that Petitioner contends he is entitled to habeas relief in this proceeding because he would not have been subjected to Article 10 proceedings were it not for the finding that he had violated the conditions of his parole by possessing a pink child's hat, *see, e.g.*, Amended Petition at 59 ("The sole parole violation for the 'hat' under rule 8 which I passed a polygraph about with P.O. Foster on 2/27/20 as to my having no means rae [*sic*] as to the hat

---

[22] For purposes of this analysis, the Court considers Petitioner's challenges to the June 15, 2021 decision and order to be subsumed within the appeal pending in the Appellate Division, Second Department regarding the October 14, 2021 decision and order denying his petition for discharge from SIST. In any event, as already noted, a court adjudicating a federal habeas corpus petition can recommend the denial of unexhausted claims if they are plainly meritless.

having anything to do with children and thus having no Article 10 issues."), such a challenge to the 2007 parole revocation decision is both moot, for the reasons stated in Your Honor's decision in *Clark I*,[23] and time-barred.  *See* Section II.A.1, *supra*.

Second, Petitioner's contention that he suffered a liberty deprivation because the state court lacked jurisdiction to commence and conduct the Article 10 proceedings since he was not a "detained sex offender" is plainly meritless, and is not a valid basis for habeas relief.  The issue of whether Petitioner was a "detained sex offender" was discussed in Your Honor's decision in *Clark I* in the context of evaluating whether the Article 10 proceedings were a collateral consequence of Petitioner's parole revocation.  As part of that analysis, Your Honor specifically found that Petitioner was a "detained sex offender" as defined in the MHL.  *See Clark*, 2015 WL 1501457 at *3-4 ("Clark was convicted of qualifying sex offenses, namely rape and kidnapping,

---

[23] Petitioner explicitly argued in his first federal habeas corpus proceeding that

> within the Article 10 statute you are a detained offender for things that arose from the offense[.]  In this case the parole violation is what arose from the offense and has me detained[.]

> The habeas corpus is relevant in that should the parole violation be removed I would not be subject to the Article 10 proceeding[.] . . .

> This is the concrete and continuing injury and a collateral consequence[.]

*Clark I*, ECF No. 32 at 1-2.  The report and recommendation issued by the Honorable Lisa Margaret Smith in *Clark I* stated that "application of the [MHL] means that Petitioner would be subject to this proceeding at the expiration of his sentence, *regardless of whether or not his parole had been revoked*. . . .  As the statute makes clear, it is Petitioner's conviction, not his parole revocation, that triggers the civil management provisions of Article 10."  *Clark I*, ECF No. 31 at 4 (emphasis added); *see Clark*, 2015 WL 1501457 at *3-4 (adopting reasoning of the report and recommendation that the commencement of Article 10 proceedings was not a collateral consequence of the parole revocation).  This reasoning applies with equal force in this habeas proceeding.  The parole revocation is therefore irrelevant to any of Petitioner's claims in this proceeding challenging the Article 10 proceedings and the decisions that he should be subject to civil confinement and then SIST.

and was therefore a detained sex offender until he completed his sentence on May 31 [*sic*], 2013,

whether or not he was released on parole."). As Your Honor explained, Article 10 proceedings

are mandatory for all persons who are "detained sex offenders," which includes a person

> in the care, custody, control, or supervision of an agency with jurisdiction,
> with respect to a sex offense or designated felony, in that the person is
> either . . .
>
> (1) . . . convicted of a [qualifying] sex offense . . . and is currently serving
> a sentence for, or subject to supervision by the division of parole, whether
> on parole or on post-release supervision, for such offense or for a related
> offense; [or] . . .
>
> (4) . . . convicted of a designated felony that was sexually motivated and
> committed prior to the effective date of this article[.]

MHL § 10.03(g)(1), (4); *see Clark*, 2015 WL 1501457 at *3-4. Petitioner was convicted of two

qualifying offenses—rape and kidnapping—and was therefore a detained sex offender until he

completed his sentence on May 30, 2013,[24] whether or not he was released on parole.

Petitioner's rape conviction is a qualifying sex offense pursuant to MHL § 10.03(p)(1). *See*

MHL § 10.03(p)(1) (defining "sex offense" as, *inter alia*, "any felony defined in article one

hundred thirty of the penal law," which includes rape). Petitioner's kidnapping offense also

made him a detained sex offender because it was a "designated felony that was sexually

motivated" pursuant to MHL §§ 10.03(p)(4) and 10.03(f). *See* MHL § 10.03(p)(4); MHL §

10.03(f) ("'Designated felony' means any felony offense defined by any of the following

---

[24] As explained in footnote 5, *supra*, the maximum expiration date of Petitioner's
sentence for his sex offenses, which he affirmed in his state habeas corpus petition challenging
his parole revocation, was May 30, 2013.

provisions of the penal law: . . . kidnapping in the second degree as defined in section 135.20.");
*see Clark*, 2015 WL 1501457 at *4.[25]

Moreover, even if the Court were to accept Petitioner's contention that as of August 28, 2012, the date on which the Article 10 Petition was filed, he was only then serving his consecutive sentence on a drug possession charge, Petitioner was still a "detained sex offender" as defined in the MHL because he was a convicted sex offender who was incarcerated on a "related offense."  The MHL defines "related offenses" to "include any offenses that are prosecuted as part of the same criminal action or proceeding, or which are part of the same criminal transaction, or which are the bases of the orders of commitment received by the department of correctional services in connection with an incarcerated individual's current term of incarceration."  MHL § 10.03(l).  Petitioner's drug possession crime is a "related offense" to his qualifying sex offenses because (1) he was sentenced for the drug possession crime at the same time as the sex offenses, *i.e.*, as part of the same criminal proceeding, *see* SR 102 (Petitioner was sentenced in 1985 for rape and kidnapping to concurrent terms of eight and one-third to 25 years, and *at the same time*, was sentenced for criminal possession of marijuana to a

---

[25] Without the benefit of having a copy of either the Article 10 Petition or the record from the Article 10 jury trial, the Court has assumed that Petitioner's kidnapping conviction constitutes a qualifying sex offense insofar as it was a "designated felony" that was "sexually motivated" pursuant to MHL § 10.03.  Neither Petitioner nor Respondents have argued to the contrary.  *See* Amended Petition at 4 ("[T]he qualification required by statute that you have to be under a qualifying offense was unlawful as the Rape 1 and Kidnap 2 were concurrent and that sentence fully satisfied on June 6th 2008."); Resp. Mem. at 18 (Petitioner's rape and kidnapping convictions are "subject to the grandfathering clause of MHL § 10.03(g)(4)").  Nonetheless, it should be noted that the MHL provides that "[w]henever the petition alleges the respondent's commission of a designated felony prior to the effective date of this article, the issue of whether such offense was sexually motivated shall be determined by the jury."  MHL § 10.07(c).  Even if the kidnapping offense were not a designated felony that was sexually motivated, however, there can be no dispute that Petitioner's rape conviction was a qualifying sex offense under MHL § 10.03(p)(1).

consecutive term of 2 to 6 years) & SR 176; *People v. Clark*, 126 A.D.2d 659 (N.Y. App. Div. 1987) (decision affirming judgments of conviction "both rendered May 17, 1985" for rape, kidnapping, and marijuana possession); and (2) at the time the Article 10 Petition was filed, the drug possession crime was a basis (according to Petitioner, the sole basis) for Petitioner's incarceration*, see State v. Rashid,* 16 N.Y.3d 1, 18 n.12 (2010) ("A DOCS[26] inmate does not even have to have been committed to DOCS's custody for a sex offense in order to be a 'detained sex offender.'"); *State v. Lance S.,* 72 Misc. 3d 798, 801 (N.Y. Sup. Ct. 2021) ("'Related offenses' include those which are 'the bases of the orders of commitment received by [DOCCS] in connection with an inmate's current term of incarceration.' . . . Under [MHL § 10.03(l)'s] plain meaning, the defendant's conviction for assault in the second degree meets that test. It is undisputed that the defendant was serving a sentence in state prison based on a commitment order for at least this offense as the time the petition was filed."); *see also id.* at 802 ("[A]s relevant here, the statute allows, without limitation, the filing of a civil management petition at the time a respondent is confined in DOCCS based on orders of commitment for *any crime*, so long as the respondent also was previously convicted of a sex offense as defined by the statute.") (emphasis in original).

Accordingly, Petitioner was a "detained sex offender" at the time that the Article 10 proceeding was initiated, and Petitioner's "Cause One," challenging the state court's jurisdiction over him in the Article 10 proceeding, is meritless and should be denied.

---

[26] As of the date of this decision, the agency now known as DOCCS was named the New York State Department of Correctional Services, and was regularly referred to using the acronym DOCS. *See* "History of the New York State Board of Parole," *available at* https://doccs.ny.gov/community-supervision-handbook/introduction [https://perma.cc/LH68-PXKK] (last visited 8/5/2024).

32

### 2. Due Process Violation Based on Refusal to Consider Polygraph Evidence

"Cause 2" appears to challenge Judge Cacace's July 26, 2016 decision and order, and possibly also her October 14, 2021 order; Petitioner seems to argue that the evidence did not support her determinations that Petitioner should be subjected to civil confinement and remain under SIST. *See* Amended Petition at 5 ("Railroading as nowhere in decades has Article 10 issues been present in my life, character or behavior. Attested to by polygraph(s) and by no demonstrable evidence of such."). "Cause 4" asserts a due process violation, seemingly based on the denial of Petitioner's ability to use polygraph evidence to challenge every decision from the 2007 parole revocation through the denial of his discharge from SIST. It also includes unspecified allegations of defamation, seemingly based on either the expert medical opinions credited by the state courts in concluding that Petitioner was a sex offender who should be subject to civil confinement and then SIST, or the opinions of the state courts themselves that he was a sex offender who should be subject to civil confinement and then SIST. Petitioner appears to believe that these opinions—either those of the experts or those of the state courts, it is unclear which—were based solely on the conduct that led to the revocation of his parole, *i.e.*, his possession of a pink child's hat.

"Cause 4" reads in full as follows:

> Amendment 14: Amendment 5: Due Process: Fair Hearing[.] That without polygraph support as to mens rea and veracity it is beyond a petitioners [*sic*] understanding how (as a purported sex offender) to present day say who you are or even say it absolutely was not a child's hat[]. And that opinion does not extend to varied forms of defamation such as vilification, derigation [*sic*], denigation [*sic*], and even oblaquy [*sic*] such "supposed" opinions are so damaging in the light that you are a purported sex offender Hearndon [*sic*] v. Lowry as to such opinions of the State which the Georgia sheriff could be construed as [Office of Mental Health] and you are violently going to overthrow the nation and the United

> States Supreme Court as the proponent of fair hearings and truth would portend as a case where a polygraph would settle the matter.

*Id.* at 6.

Elsewhere in the Amended Petition, Petitioner states,

> I just wish to say that polygraphs really must be authorized by the State of New York and the Federal Courts.  There is simply little way to defend yourself in certain situations without them. . . . in taking a polygraph clearly there were no mens rae [*sic*] issues as to me possessing a prohibited item.  Obviously to possess such a thing you must knowingly possess such a thing.  Herndon v. Lowry says the constitution cannot support an innocent act being made a crime.  The polygraphs show that I am truthful and do not lie to Parole, Clinicians, Employers or Family.

*Id.* at 60.[27]

Any challenge to state court decisions to exclude or not consider evidence of polygraph examinations of Petitioner is not a proper basis for habeas relief; habeas relief does not lie for alleged state court errors in applying state evidentiary rules.  *See, e.g.*, *Gibson v. Bell*, No. 21-1892, 2023 WL 7320864, at *1 (2d Cir. Nov. 7, 2023) (summary order) ("[A]s the Supreme Court has repeatedly stated, federal habeas corpus relief does not lie for errors of state law.") (cleaned up); *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (*per curiam*) ("[S]tate trial court

---

[27] The case cited by Petitioner, *Herndon v. Lowry*, 301 U.S. 242 (1937), involved a habeas corpus petition brought by an individual who had been convicted of the crime of attempting to incite insurrection under Georgia criminal law.  The petitioner was a member of the Communist Party who had engaged in activities to recruit new party members.  In reversing the denial of the habeas corpus petition, the United States Supreme Court held that the statute pursuant to which the petitioner had been convicted was "[s]o vague and indeterminate" as to "the boundaries thus set to the freedom of speech and assembly that the law necessarily violate[d] the guarantees of liberty embodied in the Fourteenth Amendment."  *Id.* at 263-64.  *Herndon* is entirely inapposite here.  Petitioner is neither challenging, nor can he now challenge, *see* Section II.A.1, *supra*, the constitutionality of the parole conditions he was found to have violated by possessing a pink child's hat.  And any argument regarding Petitioner's *mens rea* with respect to the parole violation—which is just a different form of a challenge to the parole revocation decision—is moot, time-barred, and has no bearing on any issue to be decided by this Court.

34

evidentiary rulings generally are not a basis for habeas relief."). In New York state courts "[i]t is well established that 'the reliability of the polygraph has not been demonstrated with sufficient certainty' for the results of such tests to be admissible in evidence." *People v. De Lorenzo*, 45 A.D.3d 1402, 1402 (N.Y. App. Div. 2007) (quoting *People v. Shedrick*, 66 N.Y.2d 1015, 1018 (1985) and collecting cases); *see also*, *e.g., People v. Krivak*, 78 Misc. 3d 988, 1001 (N.Y. Cnty. Ct. 2023) ("Polygraph examinations and their results are inadmissible during trials as they are not considered competent or reliable[.]") (collecting cases). Federal courts have likewise found polygraph test results to be inadmissible. *See Collins v. Bennett*, No. 01-cv-6392, 2004 WL 951362, at \*5 (W.D.N.Y. Apr. 13, 2004) ("[T]he 'traditional rule' in the Second Circuit is that polygraph results are inadmissible.") (citing *United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992), and *United States v. Messina*, 131 F.3d 36 (2d Cir. 1997)); *see also United States v. Hester*, 674 F. App'x 31, 35 (2d Cir. 2016) (summary order) ("While we have never held that polygraph evidence is *per se* inadmissible, we have upheld its exclusion on the grounds that it may be unreliable, unfairly prejudicial, or misleading to the jury."). There is therefore no merit to Petitioner's habeas corpus claims based on the state courts' decisions not to consider Petitioner's polygraph evidence.[28]

To the extent that Petitioner may be asserting that in deciding that he was a sex offender requiring civil confinement or SIST, the state courts either wrongly credited defamatory opinions of mental health professionals or themselves issued defamatory opinions, this claim is best understood as challenging the July 26, 2016 and October 14, 2021 decisions as being against the

---

[28] In any event, as noted by Respondents, Petitioner's counsel did make Judge Cacace aware, during an October 12, 2021 court appearance related to Petitioner's petition for discharge from SIST, that Petitioner had passed two polygraph examinations. *See* SR 250 ("So based upon all that, including two polygraphs, which showed no deception . . . it is our position that the Court should, notwithstanding the examination results, release him from SIST . . . .").

weight of the evidence.  But a challenge to the weight of the evidence is "a pure state law claim" that is not cognizable on federal habeas review.  *McQuaid v. Morton*, No. 18-cv-10705 (CS) (AEK), 2023 WL 8947373, at *6 (S.D.N.Y. Dec. 28, 2023); *see McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"); *Sincere M. v. New York Office of Mental Hygiene*, 409 F. Supp. 3d 70, 76 (E.D.N.Y. 2019) (dismissing habeas claim that state court's determination that petitioner required secure confinement was against weight of the evidence because "[a] claim challenging the weight of the evidence is purely a matter of state law and is therefore not cognizable on habeas review.").  Accordingly, any such claim for habeas relief should be denied.

### D.     Petitioner's Motions for Summary Judgment

Well after filing the Amended Petition, Petitioner filed three voluminous (and often duplicative) compilations of documents in support of his contentions, each of which is styled as a "motion for summary judgment."  *See* ECF Nos. 40, 43, 46 (filings entered on the docket on October 25, 2023; October 30, 2023; and November 20, 2023).

A motion for summary judgment is seldom the proper vehicle for adjudicating a petitioner's habeas corpus claims.  The procedures for filing and adjudicating federal habeas corpus petitions are set forth in the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules").  A motion for summary judgment may be heard in a Section 2254 case to the extent the motion is consistent with the Habeas Rules.  *See Whitaker v. Meachum*, 123 F.3d 714, 715-16 n.2 (2d Cir. 1997); *see also Brown v. Lee*, No. 21-cv-2854 (JHR) (KHP), 2023 WL 9785319, at *10 (S.D.N.Y. Sept. 15, 2023), *adopted by* 2024 WL 756310 (S.D.N.Y. Feb. 23, 2024).  But because nothing in the Habeas Rules "contemplates the

36

disposition of habeas petitions by motion for summary judgment," *Mitchell v. Goord*, No. 03-cv-0019 (GLS), 2005 WL 701096, at *3 (N.D.N.Y. Mar. 21, 2005), such motions are "rarely appropriate" in the habeas context, *Chase v. Wolcott*, No. 21-cv-0473 (MAD) (TWD), 2021 WL 5232689, at *3 (N.D.N.Y. Nov. 10, 2021); *see also Corines v. Warden, Otisville Fed. Corr. Inst.*, No. 05-cv-2056 (NGG), 2008 WL 4862732 at *2 (E.D.N.Y. Jun. 10, 2008) (generally, summary judgment is only appropriate in a habeas case "where the motion would avoid the need for a full review of the trial record, such as when there is a question of jurisdiction"), *adopted by* 621 F. Supp. 2d 26 (E.D.N.Y. 2008).

This is not the rare case in which a full review of the state court record is unnecessary to the Court's decision-making. Petitioner's multiple motions for summary judgment—which attempt to advance all of the same bases for relief set forth in the Petition—are therefore not the proper vehicle for obtaining the habeas corpus relief that he seeks. In any event, for the same reasons discussed above, Petitioner has not shown the existence of any undisputed material facts that would entitle him to relief as a matter of law. Accordingly, I respectfully recommend that Petitioner's summary judgment motions be denied. *See Brown*, 2023 WL 9785319, at *22.

## CONCLUSION

For the reasons stated above, I respectfully recommend that the Petition be DENIED in its entirety, and that Petitioner's motions for summary judgment at ECF Nos. 40, 43, 46 be DENIED.

As the Petition and the motions for summary judgment present no questions of substance for appellate review, I further respectfully recommend that a certificate of probable cause should not issue, *see Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90, 91 (2d Cir. 1979) (*per curiam*), and that the Court certify pursuant to 28 U.S.C.

37

§ 1915(a) that an appeal would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 14 days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, must be filed with the Clerk of Court with courtesy copies delivered to the chambers of the Honorable Kenneth M. Karas, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Karas, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 787 F.3d 93, 102 (2d Cir. 2015).

Dated:  August 5, 2024
        White Plains, New York

Respectfully submitted,

ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Report and Recommendation has been mailed to the *pro se* Petitioner by Chambers to Petitioner's address of record on the docket.